EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Seguros Múltiples de Puerto Rico y Oriental Bank<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | Certiorari<br><br>2022 TSPR 77<br><br>209 DPR ____ |

Número del Caso: CC-2021-219

Fecha: 22 de junio de 2022

Tribunal de Apelaciones:

Panel X

Oficina del Procurador General:

Lcdo. Fernando Figueroa Santiago
Procurador General

Lcdo. Omar J. Andino Figueroa
Subprocurador General

Lcda. María Astrid Fernández Martín
Procuradora General Auxiliar

Abogado de la parte recurrida:

Lcdo. Armando Franceschi Figueroa

Materia: Ley Uniforme de Confiscaciones de 2011: Confiscación civil de un vehículo de motor en el que se encontraron sustancias controladas a pesar del Gobierno no haber presentado cargos criminales por los hechos que motivaron la confiscación.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

# EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Seguros
Múltiples de Puerto Rico
y Oriental Bank

     Recurridos

       v.                CC-2021-219     *Certiorari*

Estado Libre Asociado de
Puerto Rico y otros

     Peticionarios

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 22 de junio de 2022.

Nos corresponde determinar si, conforme a la Ley Núm. 119-2011, conocida como *Ley Uniforme de Confiscaciones de 2011* (Ley de Confiscaciones), 34 LPRA sec. 1724 *et seq.*, procede la confiscación civil de un vehículo de motor en el que se encontraron sustancias controladas a pesar del Gobierno no haber presentado cargos criminales por los mismos hechos que motivaron la confiscación. Adelantamos que resolvemos esa interrogante en la afirmativa. Esto es, que la falta de presentación de cargos criminales por los hechos que motivaron la confiscación de la propiedad en cuestión **no** invalida automáticamente la acción confiscatoria.

Pasemos a delinear los hechos que dieron lugar al recurso ante nuestra consideración.

**I**

El 3 de mayo de 2018, la Cooperativa de Seguros Múltiples de Puerto Rico (Cooperativa) y Oriental Bank (Banco) (en conjunto, los recurridos) presentaron ante el Tribunal de Primera Instancia una *Demanda* sobre impugnación de confiscación en contra del Gobierno de Puerto Rico (Gobierno). En síntesis, expusieron que, el 23 de marzo de 2018, el Gobierno —a través de la Policía de Puerto Rico (Policía) y la Junta de Confiscaciones-[1] ocupó y luego confiscó un vehículo de motor[2] por alegada violación al Art. 512 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como *Ley de Sustancias Controladas de Puerto Rico* (Ley de Sustancias Controladas), 24 LPRA sec. 2512.

Además, en su *Demanda*, expresaron que el Sr. Vicente Pizarro Soler (señor Pizarro Soler) era el dueño registral del vehículo confiscado -el cual había obtenido mediante un préstamo financiero otorgado por el Banco- y que dicho vehículo estaba asegurado por una póliza de seguro emitida por la Cooperativa. Asimismo, plantearon que la mencionada póliza de seguro tenía cubierta para el riesgo de

---

[1]   La Junta de Confiscaciones está adscrita al Departamento de Justicia. Véase Art. 3 de la Ley Núm. 119-2011, conocida como *Ley Uniforme de Confiscaciones de 2011* (Ley de Confiscaciones), 34 LPRA sec. 1724.

[2]   En específico, un automóvil marca *Mitsubishi*, modelo *Mirage* del año 2017.

confiscación y que, conforme a los términos y condiciones de la misma, la Cooperativa estaba obligada a comenzar el procedimiento de impugnación de confiscación a favor del Banco como beneficiario del endoso de confiscación.

A su vez, entre otros asuntos, los recurridos indicaron que el vehículo confiscado no había sido utilizado en violación al Art. 512 de la Ley de Sustancias Controladas, *supra*, o alguna otra ley; que la ocupación y posterior confiscación del vehículo se efectuaron en violación a los derechos constitucionales del dueño registral del vehículo, sus ocupantes y/o terceras personas con interés legal en el mismo, y que la evidencia ocupada que dio base a la confiscación se ocupó sin mediar una orden de arresto, de registro o de allanamiento.[3] Por todo lo cual, los recurridos solicitaron que el foro de instancia decretara la nulidad de la confiscación y ordenara el pago de costas, gastos y honorarios de abogado.

Por su parte, el 25 de mayo de 2018, el Gobierno presentó su *Contestación a Demanda* y negó la mayoría de las alegaciones esbozadas por los recurridos en la *Demanda*. Como parte de sus defensas afirmativas, destacó la naturaleza *in rem* del proceso de confiscación, y la presunción de legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o proceso relacionado con los mismos hechos. En resumen, defendió la constitucionalidad del proceso de

---

[3]   Véase *Demanda*, Apéndice de la Petición de *certiorari*, pág. 50.

confiscación en nuestra jurisdicción. Así pues, solicitó que el tribunal de instancia declarara *No Ha Lugar* la *Demanda*.

Posteriormente, el 11 de septiembre de 2019, los recurridos presentaron una *Moción solicitando sentencia sumaria*. En ésta plantearon que, como parte del proceso de descubrimiento de prueba, advinieron en conocimiento de que no se habían presentado cargos criminales en contra de persona alguna por los hechos que motivaron la confiscación objeto de controversia. Añadieron que "[p]or el contrario, se trata de una confiscación basad[a] en un 'hallazgo', según indica la parte demandada".[4] De este modo, argumentaron que, al no haberse presentado cargos criminales en contra de persona alguna, no procedía en derecho la confiscación de propiedad privada al amparo de la Ley de Confiscaciones, *supra*.

Así las cosas, el 4 de noviembre de 2019, el Gobierno presentó una *Oposición a moción sobre sentencia sumaria*, en la cual incluyó -entre otros- los siguientes documentos: una *Orden de confiscación*, una *Declaración jurada* prestada por un agente de la División de Drogas y Armas de la Policía, y una *Orden de registro y allanamiento* suscrita por un juez. En resumen, sostuvo que los anejos incluidos en su moción demostraban que no existía controversia de hechos en cuanto a que se ocupó el vehículo en virtud de una *Orden de registro*

---

[4]   Véase *Moción solicitando sentencia sumaria*, Apéndice de la Petición de *certiorari*, pág. 77.

*y allanamiento* expedida por un juez y que esta última se sustentó en una *Declaración jurada* de un agente de la Policía. Añadió que tampoco estaba en controversia que dentro del vehículo se encontró una sustancia controlada, la cual -según la prueba de campo- resultó ser marihuana. De esta manera, el Gobierno argumentó que la ausencia de la presentación de cargos criminales en relación con los hechos que motivaron la confiscación no significaba que el vehículo no pudiera ser confiscado. Además, destacó que la presunción de legalidad y corrección de la confiscación no se había rebatido. Ante esto, el Gobierno solicitó que el foro de instancia declarara *Ha Lugar* su *Oposición a moción sobre sentencia sumaria* y ordenara la celebración de una vista en su fondo.

Luego de evaluar los escritos presentados por las partes, el 27 de febrero de 2020, el tribunal de instancia dictó una *Sentencia* mediante la cual declaró *Ha Lugar* la *Moción solicitando sentencia sumaria* presentada por los recurridos y, en consecuencia, declaró *Ha Lugar* su *Demanda*. En particular, razonó que sólo se puede atribuir al vehículo de motor la culpa necesaria para su confiscación luego de haberse determinado la culpabilidad del imputado de cometer el delito que motivó la confiscación.[5] Ante esto, ordenó que el Gobierno devolviera el vehículo confiscado a la Cooperativa o, en su defecto, el valor de tasación más los

---

[5] Véase *Sentencia del Tribunal de Primera Instancia*, Apéndice de la Petición de *certiorari*, pág. 47.

intereses legales computados a partir de la fecha de ocupación.

Insatisfecho con la decisión del foro de instancia, el 13 de marzo de 2020, el Gobierno presentó una *Moción de reconsideración*. En ésta, reiteró el planteamiento sobre la presunción de legalidad y corrección que acompaña al proceso de confiscación civil y argumentó que los recurridos no habían presentado prueba alguna para derrotar dicha presunción. No obstante, el 14 de abril de 2020, el tribunal de instancia declaró *No Ha Lugar* la solicitud de reconsideración.

Aún en desacuerdo, el Gobierno -representado por la Oficina del Procurador General- recurrió ante el Tribunal de Apelaciones el 14 de julio de 2020 y, más adelante, los aquí recurridos presentaron su *Alegato en oposición* ante dicho foro. Luego de considerar los planteamientos de ambas partes, el foro apelativo intermedio emitió una *Sentencia* el 18 de diciembre de 2020 mediante la cual confirmó la decisión recurrida. En resumen, concluyó que era improcedente la pretensión del Gobierno de quedarse con la propiedad privada de un ciudadano a quien ni siquiera le han presentado cargos criminales en su contra.[6]

Inconforme con la determinación del Tribunal de Apelaciones, el Gobierno presentó una *Moción de reconsideración* el 4 de enero de 2021. Sin embargo, dicho

---

[6]  Véase *Sentencia del Tribunal de Apelaciones*, Apéndice de la Petición de *certiorari*, pág. 10.

foro denegó la misma mediante una *Resolución* emitida el 25 de enero de 2021.[7]

Insatisfecho con la decisión del foro apelativo intermedio, el Gobierno presentó ante nuestra consideración una Petición de *certiorari* el 26 de marzo de 2021. En la misma, planteó -como único error- lo siguiente:

> Erró el Honorable Tribunal de Apelaciones al confirmar la *Sentencia* emitida por el Tribunal de Primera Instancia que declaró "Con Lugar" la impugnación de la confiscación aun cuando no es necesario que se inicie procedimiento criminal alguno contra el dueño del bien para que proceda su confiscación civil.

El 28 de mayo de 2021, expedimos el auto de *certiorari* solicitado por el Gobierno. Más adelante, el 14 de septiembre de 2021, acogimos una solicitud del Gobierno a los fines de eximirle de presentar su Alegato, según lo permite la Regla 33 (k) de nuestro Reglamento, 4 LPRA Ap. XXI-B.[8] Posteriormente, el 15 de octubre de 2021, los recurridos presentaron su Alegato. Así las cosas, el caso quedó sometido para la adjudicación en sus méritos el 19 de octubre de 2021.

Con el beneficio de la comparecencia de ambas partes, procedemos a examinar el derecho aplicable para resolver la controversia planteada.

---

[7]    El archivo en autos de copia de la notificación de la *Resolución* fue el 26 de enero de 2021.

[8]    El archivo en autos de copia de la notificación de dicha *Resolución* fue el 15 de septiembre de 2021.

## II

La confiscación es "el acto de ocupación y de investirse para sí el [Gobierno] de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en la comisión de ciertos delitos". Reliable v. Depto. Justicia y ELA, 195 DPR 917, 924 (2016). Es decir, a través de la confiscación, se le confiere al Gobierno -al amparo de cualquier estatuto que así lo autorice- el título de aquellos bienes que se hayan utilizado para fines ilícitos. Reliable Financial v. ELA, 197 DPR 289, 296 (2017).

Nuestro ordenamiento jurídico reconoce dos (2) modalidades del proceso de confiscación: (1) la de carácter criminal, conocida como confiscación *in personam*, y (2) la de naturaleza civil, conocida como confiscación *in rem.* MAPFRE v. ELA, 188 DPR 517, 525 (2013). El procedimiento *in personam* es parte del proceso criminal dirigido en contra de la persona imputada de delito; en caso de que ésta resultara culpable, procedería emitir una sentencia que incluirá -como sanción- la confiscación de la propiedad incautada. Mientras, el procedimiento *in rem* es una acción civil dirigida contra la cosa misma y no contra el dueño de la propiedad, poseedor, encargado o cualquier otra persona con interés legal sobre el bien. MAPFRE v. ELA, *supra*, pág. 525. Esta última modalidad -la confiscación *in rem*- es la que se recoge en la Ley de Confiscaciones, *supra*.

En Puerto Rico, la Asamblea Legislativa aprobó la Ley de Confiscaciones, *supra*, con el fin de consignar las normas

que regirán el procedimiento de las confiscaciones en nuestra jurisdicción. Figueroa Santiago *et als*. v. ELA, 2021 TSPR 121, 207 DPR ___ (2021). Mediante ésta, el legislador estableció un trámite justo, expedito y uniforme para la confiscación de bienes por parte del Gobierno. Figueroa Santiago *et als*. v. ELA, *supra*; Reliable Financial v. ELA, *supra*, pág. 297. En particular, este esquema normativo dispuesto en la Ley de Confiscaciones, *supra*, establece un procedimiento expedito con requisitos estrictos que aplican tanto al Gobierno como a las partes con interés en los bienes confiscados. Reliable Financial v. ELA, *supra*, pág. 298. Así pues, cuando la confiscación se realiza conforme a ese trámite, ésta constituye una excepción a la protección constitucional que impide tomar una propiedad privada para fines públicos sin una justa compensación. Flores Pérez v. ELA, 195 DPR 137, 146 (2016).

La Exposición de Motivos de nuestra Ley de Confiscaciones, *supra*, expone claramente la intención legislativa de caracterizar la confiscación como una acción civil y no penal, así como de independizar el proceso de confiscación *in rem* de cualquier otro procedimiento criminal. Figueroa Santiago *et als*. v. ELA, *supra*. Al respecto, la Asamblea Legislativa manifestó lo siguiente:

> En nuestra jurisdicción, la confiscación es una acción civil o [*in rem*], distinta y separada de cualquier acción *in personam*. La confiscación que lleva a cabo el Estado se basa en la ficción legal de que la cosa es la ofensora primaria. **El procedimiento *in rem* tiene existencia independiente del**

**procedimiento penal de naturaleza *in personam*, y no queda afectado en modo alguno por éste.** Los procedimientos de confiscación civil pueden llevarse a cabo y culminarse antes de que se acuse, se declare culpable o se absuelva al acusado. **Incluso, pueden llevarse aun cuando no se haya presentado ningún cargo.** Esto [es] debido a que la acción civil se dirige contra la cosa en sí misma[.] [E]n general, la culpabilidad o inocencia del propietario es irrelevante en cuanto a la procedencia o no de la confiscación civil. (Énfasis suplido y citas omitidas). Exposición de Motivos de la Ley de Confiscaciones, *supra*. Véase, además, Figueroa Santiago *et als*. v. ELA, *supra.*

Esa intención legislativa en cuanto a la confiscación *in rem* quedó plasmada en la versión original del Art. 8 de la Ley de Confiscaciones, 34 LPRA sec. 1724e, al disponer que:

**El proceso de confiscación será uno civil dirigido contra los bienes e independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado.** (Énfasis suplido).

Conforme a lo establecido por el mencionado Art. 8 de la Ley de Confiscaciones, *supra*, este Tribunal ha expuesto de forma clara que en el proceso de confiscación *in rem* se permite que el Gobierno vaya directamente contra la propiedad como parte de la ficción jurídica que considera que a la cosa -como medio o producto del delito- se le puede fijar responsabilidad independientemente del autor del delito. Srio. de Justicia v. Tribunal Superior, 89 DPR 574, 577-578 (1963).

En cuanto a los bienes sujetos a confiscación, el Art. 9 de la Ley de Confiscaciones, 34 LPRA sec. 1724f, especifica lo siguiente:

> Estará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, **en las leyes de sustancias controladas**, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación.
>
> Toda propiedad que esté sujeta a una sentencia de confiscación que así lo autorice, será confiscada a favor del Gobierno de Puerto Rico. (Énfasis suplido).

Por su parte, el Art. 10 de la Ley de Confiscaciones, 34 LPRA sec. 1724g, detalla lo relacionado a la ocupación de la propiedad sujeta a confiscación. Específicamente, establece lo siguiente:

> La ocupación de la propiedad, **sujeta a confiscación**, se llevará a cabo por la agencia del orden público o el funcionario a cargo de la implantación de la ley por sí o por conducto de sus delegados, policías o agentes del orden público, mediante orden de un magistrado o tribunal competente o sin previa orden del tribunal, en los siguientes casos:
>
> (a) [c]uando la ocupación se efectúa mientras se lleva a cabo un arresto;
>
> (b) cuando la ocupación se efectúa en virtud de una sentencia judicial, o

(c) **cuando la propiedad a ocuparse haya sido utilizada, resulte o sea el producto de la comisión de cualquiera de los delitos, leyes o estatutos confiscatorios que se expresen en la sec. 1724f de este título.** (Énfasis suplido).

En lo pertinente a la controversia que nos ocupa, el Art. 512 de la Ley de Sustancias Controladas, *supra*, dispone que:

(a) Los siguientes bienes estarán sujetos a confiscaciones por el [Gobierno] de Puerto Rico:

(1) **Toda sustancia controlada fabricada, distribuida, dispensada o adquirida, infringiendo las disposiciones de este capítulo.**

(2) Toda materia prima, parafernalia, producto o equipo de cualquier clase que se use o se proyecte usar en la fabricación, confección de compuestos, elaboración, entrega, importación, o exportación de cualquier sustancia controlada, infringiendo las disposiciones de este capítulo.

(3) Toda propiedad que se use o esté destinada a usarse como envase de la propiedad descrita en las cláusulas (1) y (2) de este inciso.

(4) **Todo medio de transporte, incluyendo naves aéreas, vehículos, bestias o embarcaciones, que se usen o se destinen para transportar o facilitar en alguna forma la transportación, venta, recibo, posesión o encubrimiento de la propiedad descrita en las cláusulas (1) y (2) de este inciso.**

. . . . . . . .

(b) Cualquier propiedad sujeta a confiscación de acuerdo con la cláusula (4) del inciso (a) de esta sección será incautada siguiendo el procedimiento establecido por la Ley Núm. 39 de 4 de junio de 1960, según enmendada, conocida como Ley Uniforme de

Confiscación de Vehículos, Bestias y Embarcaciones.**9** (Énfasis suplido).

En múltiples ocasiones hemos reiterado que los elementos necesarios para determinar si procede una confiscación civil son los siguientes: (1) la existencia de prueba suficiente y preponderante de que se ha cometido un delito, y (2) el nexo entre la comisión del delito y la propiedad confiscada. Figueroa Santiago *et als*. v. ELA, *supra*; Díaz Ramos v. ELA y otros, 174 DPR 194, 203 (2008); Suárez v. ELA, 162 DPR 43, 52 (2004); Del Toro Lugo v. ELA, 136 DPR 973, 983 (1994). Además, la legalidad y corrección de la confiscación se presumirá "independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos". Art. 15 de la Ley de Confiscaciones, 34 LPRA sec. 1724l. Por lo tanto, la persona que interese impugnar un procedimiento de confiscación tiene el peso de la prueba para derrotar dicha presunción. Íd.

Por último, este Tribunal ha manifestado que, independientemente de la naturaleza civil de la confiscación, los estatutos confiscatorios deben interpretarse restrictivamente debido al propósito punitivo de la acción confiscatoria en sí, en atención a la manera en la que se aplica la sanción, el procedimiento que se utiliza y las defensas permitidas en el proceso. Santiago

---

**9** Entiéndase que la Ley Núm. 39 de 4 de junio de 1960, según enmendada, conocida como *Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones* fue sustituida por la Ley Núm. 93 de 13 de julio de 1988, según enmendada, conocida como *Ley Uniforme de Confiscaciones de 1988*. Esta última fue derogada por la Ley de Confiscaciones, *supra*.

v. Supte. Policía de PR, 151 DPR 511, 515 (2000); Centeno Rodríguez v. ELA, 170 DPR 907, 913 (2007).

## III

En el caso que nos ocupa, los recurridos impugnaron la confiscación del vehículo registrado a nombre del señor Pizarro Soler. Durante el proceso, presentaron una *Moción solicitando sentencia sumaria* fundamentada en que el Gobierno nunca presentó cargos criminales por los hechos que motivaron esa confiscación. En oposición, el Gobierno presentó evidencia documental que acreditaba que había realizado la confiscación en virtud de una *Orden de registro y allanamiento* basada en la declaración jurada suscrita por un agente de la División de Drogas y Armas de la Policía.

En síntesis, dicho agente de la Policía declaró que, durante una ronda preventiva por un área de alta incidencia criminal en el Municipio de San Juan, un can -al mando de otro agente policíaco- marcó el vehículo en cuestión al sentarse frente a la puerta delantera del pasajero como señal de que había detectado la existencia de armas de fuego o sustancias controladas. Ante ese escenario, el agente relató que se acercó al vehículo y pudo observar que encima del asiento del pasajero de al frente había una cartera negra que -aunque se encontraba cerrada- exhibía la silueta de lo que aparentaba ser un arma de fuego tipo pistola. Añadió que procedió a realizar gestiones para localizar al dueño del vehículo, pero no tuvo éxito, por lo que se procedió a sellar y ocupar el vehículo para investigación.

Posteriormente, el agente solicitó una *Orden de registro y allanamiento*.

Asimismo, de los documentos provistos por el Gobierno surge que dentro del vehículo se encontró una "bolsita plástica transparente de cierre a presión conteniendo picadura de marihuana". Por tal razón, el 5 de abril de 2018, se emitió una orden de confiscación sustentada en la violación del Art. 512 de la Ley de Sustancias Controladas, *supra*, lo cual fue notificado a los recurridos el 17 de abril de 2018.

En su *Moción solicitando sentencia sumaria*, los recurridos solicitaron que se declarara con lugar su *Demanda* porque el Gobierno nunca presentó cargos criminales por el delito que originó la confiscación del vehículo del señor Pizarro Soler. Nótese, sin embargo, que la moción está sustentada en una premisa errada, pues el planteamiento sobre ausencia de cargos criminales no invalida automáticamente el proceso de confiscación.

Según expusiéramos, la confiscación es un procedimiento de naturaleza *in rem* y, como tal, es independiente del procedimiento criminal que pudiera presentarse en contra del presunto autor del delito. Así pues, la confiscación civil puede prevalecer aun cuando el Gobierno no haya presentado cargo alguno, ya que lo determinante es si alguna actividad delictiva se ha cometido en el vehículo o mediante el uso del vehículo, aunque la misma no haya sido cometida por el poseedor o conductor del mismo, es decir, independientemente

de quién pudo cometer el acto delictivo. Véanse: Art. 8 de la Ley de Confiscaciones, *supra*; Figueroa Santiago *et als.* v. ELA, *supra*; First Bank, Univ. Ins. Co. v. ELA, 156 DPR 77, 83 (2002). Claramente, la Ley de Confiscaciones no admite otra interpretación.

A la luz del derecho aquí esbozado, resolvemos que el Tribunal de Apelaciones erró al confirmar la decisión del foro de instancia mediante la cual declaró *Ha Lugar* la *Moción solicitando sentencia sumaria* presentada por los recurridos y, en consecuencia, declarar *Ha Lugar* la *Demanda* sobre impugnación de confiscación civil fundamentándose para ello en que el Gobierno no presentó cargos criminales por los hechos que motivaron la confiscación. Ciertamente, los procedimientos de confiscación civil pueden efectuarse aun cuando el Gobierno no haya presentado ningún cargo. La Ley de Confiscaciones, *supra*, expresamente dispone en su Art. 8 que el proceso de confiscación será independiente de cualquier otro procedimiento penal, civil o administrativo sobre los mismos hechos. **Por consiguiente, concluimos que la falta de presentación de cargos criminales por los hechos que motivaron la confiscación de la propiedad en cuestión no invalida automáticamente la acción confiscatoria.**

Así las cosas, procede devolver el caso ante la consideración del tribunal de instancia para la celebración del juicio correspondiente, con todas las garantías de ley.

**IV**

Por los fundamentos expuestos anteriormente, revocamos la *Sentencia* emitida el 18 de diciembre de 2020 por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de manera compatible con lo aquí resuelto.

Se dictará Sentencia en conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Seguros
Múltiples de Puerto Rico
y Oriental Bank

      Recurridos

        v.                        CC-2021-219        *Certiorari*

Estado Libre Asociado de
Puerto Rico y otros

      Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 22 de junio de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos la Sentencia del Tribunal de Apelaciones emitida el 18 de diciembre de 2020. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo resuelto en la *Opinión.*

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente, a la cual se unió la Jueza Presidenta Oronoz Rodríguez. El Juez Asociado señor Colón Pérez emitió una Opinión Disidente, a la cual se unió la Jueza Presidenta Oronoz Rodríguez.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

| Cooperativa de Seguros Múltiples de Puerto Rico y Oriental Bank<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | CC-2021-219 | Certiorari |
|---|---|---|

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 22 de junio de 2022.

Nuevamente, este Tribunal acrecienta una ficción en el campo de las confiscaciones civiles que no tiene cabida en nuestro ordenamiento jurídico constitucional. Hoy, la Mayoría valida las confiscaciones civiles sin que sea necesaria la presentación de cargos criminales por los mismos hechos que motivan la confiscación. Tal conclusión se fundamenta únicamente en el análisis de si tal actuación está avalada por la <u>Ley uniforme de confiscaciones de 2011</u>, Ley Núm. 199-2011, 34 LPRA secs. 1724-1724w (Ley de Confiscaciones). **Este proceder es, a lo menos, insuficiente; <u>a lo más, inconstitucional</u>**.

El efecto de lo que hoy se pauta es el otorgamiento de un poder excesivo para confiscar bienes bajo un estándar de prueba menor, lo cual, en la práctica, redundará en la nulificación del uso de las confiscaciones criminales.

Como agravante, se automatiza de forma impermisible la determinación de que una propiedad fue utilizada en violación a una ley sin que tan siquiera el Gobierno presente cargos criminales por tal violación.

En cambio, considero que la confiscación civil de un bien sin que exista una condena penal vulnera las garantías del debido proceso de ley, a no ser privado de la propiedad sin justa compensación, la prohibición contra multas excesivas y registros y allanamientos irrazonables, así como la presunción de inocencia.

Por la primacía de estas garantías constitucionales, rechazo vehementemente el curso de acción adoptado por la Mayoría. A continuación, expongo los fundamentos en Derecho que orientan mi postura.

**I**

La confiscación es el acto mediante el cual el Gobierno ocupa e inviste para sí todo derecho de propiedad sobre aquellos bienes que hayan sido utilizados en la comisión de ciertos delitos. Flores Pérez v. ELA, 195 DPR 137, 146 (2016) (citando a Doble Seis Sport v. Depto. Hacienda, 190 DPR 763, 784 (2014); Díaz Ramos v. E.L.A. y otros, 174 DPR 194, 202 (2008); Del Toro Lugo v. E.L.A., 136 DPR 973, 980-981 (1994)). Ahora bien, la Constitución de Puerto Rico dispone que "[n]o se tomará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley", por lo que, en protección de esta y

otras garantías, las confiscaciones deben efectuarse en estricta observancia del debido proceso de ley. Art. II, Sec. 9, Const. PR, LPRA, Tomo 1. Véase, además, Coop. Seg. Múlt. v. E.L.A., 180 DPR 655, 662-663 (2011).

Como es conocido, el proceso de confiscación tiene dos (2) modalidades. La primera es nombrada la confiscación in personam. Esta es de naturaleza estrictamente penal y forma parte del proceso criminal dirigido contra el alegado autor del delito base que autoriza la confiscación. Coop. Seg. Múlt. v. E.L.A., supra, pág. 664. En ese proceso, "si se encuentra culpable a la persona imputada, la sentencia impondrá como sanción la confiscación del bien incautado". Íd.

La otra modalidad es aquella instrumentada por la Ley de Confiscaciones, supra. Mediante este estatuto el Gobierno, a través de una acción civil, va directamente contra la cosa misma (in rem) y no contra la persona con interés legal sobre tal propiedad. Este tipo de confiscación se basa en la ficción jurídica de que el bien confiscado es el ofensor primario y que, a este, como medio o producto del delito, se le puede imponer responsabilidad independientemente del autor del delito. Bco. Bilbao Vizcaya et al. v. ELA et al., 194 DPR 116, 156 (2015) (Voto particular disidente del Juez Asociado Señor Estrella Martínez). Es decir, de cierto modo, se culpa propiamente al objeto confiscado mediante una ficción que presupone su participación en el delito.

A esos fines, el Art. 9 de la Ley de Confiscaciones, supra, establece que "[e]stará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación". 34 LPRA sec. 1724f.[1]

Sobre el particular, a la fecha en que ocurrieron los eventos que propiciaron esta controversia, el Art. 8 de la Ley de Confiscaciones, supra, únicamente disponía la independencia entre el proceso civil in rem y cualquier otro tipo de proceso, incluyendo el penal.[2] Ello, claro está, sujeto a que, tal y como exige el Art. 9 y su contrarreferencia en el Art. 10 antes expuesto, se pruebe

---

[1]Refiérase, además, al Art. 10 de la ley precitada, el cual establece que la confiscación podrá realizarse "cuando la propiedad a ocuparse haya sido utilizada, resulte o sea el producto de la comisión de cualquiera de los delitos, leyes o estatutos confiscatorios que se expresan en el Artículo 9 de esta Ley". 34 LPRA sec. 1724g(c).

[2]Particularmente, el Art. 8 de la Ley de Confiscaciones, supra, disponía lo siguiente:

> El proceso de confiscación será uno civil dirigido contra los bienes e independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado. 34 LPRA ant. sec. 1724e.

en el contexto criminal la comisión de un delito grave o menos grave que autorice la confiscación.

En ese sentido, la ficción estatutaria que establece la independencia entre ambos procesos en nada afecta el rechazo que reiteradamente este Tribunal le ha brindado a esa inconexión pretendida entre lo que ocurre en el proceso penal y sus implicaciones en la impugnación de la confiscación civil. Lo anterior, particularmente, por el carácter punitivo de las confiscaciones y su fricción con múltiples garantías constitucionales.

Es por ello que, por más que se ha determinado que los criterios necesarios para auscultar si procede una confiscación se reducen a que el Gobierno demuestre la concurrencia de la existencia de prueba suficiente y preponderante de que se ha cometido un delito, y un nexo entre la comisión del delito y la propiedad confiscada,[3] **consecuentemente hemos "condiciona[do] el proceso civil de confiscación al resultado de la causa criminal <u>contra el alegado autor del delito que fundamenta dicha confiscación</u>"**. (Negrillas suplidas y énfasis suplido en el original). <u>Coop. Seg. Múlt. v. E.L.A.</u>, supra, pág. 676.

El raciocinio para ello fue, y siempre ha sido, que independientemente de la etiqueta que se le ha impartido estatutariamente a este tipo de confiscaciones, estas son

---

[3]Véase, <u>Doble Seis Sport. v. Depto. Hacienda</u>, supra, pág. 784; <u>Suárez v. E.L.A.</u>, supra, pág. 52; <u>Del Toro Lugo v. E.L.A.</u>, supra, pág. 983.

civiles en su forma, pero punitivas en su naturaleza. Íd., pág. 680. Ello debido a que "**la forma en que es aplicada la sanción, el procedimiento que se utiliza y las defensas permitidas en éste, reflejan un propósito punitivo**". (Negrillas suplidas). <u>Santiago v. Supte. Policía de P.R.</u>, 151 DPR 511, 516 (2000).

En consecuencia, ante la inexistencia de un procedimiento criminal que culmine en una convicción, consistentemente se ha declarado la ilegalidad de lo confiscado civilmente debido a la naturaleza criminal y el propósito de castigar una ofensa contra la ley del proceso <u>in rem</u>.[4] Así, se preserva la máxima de que "**los estatutos relacionados con confiscaciones de propiedad privada se interpretarán de manera restrictiva y de forma compatible con la justicia y los dictados de la razón natural**". (Negrillas suplidas). <u>Coop. Seg. Múlt. v. E.L.A.</u>, supra, pág. 668.

Evaluados los fundamentos jurídicos y estatutarios atinentes, veamos, entonces, los hechos que dan lugar a la controversia ante nos.

## II

En el 2017, tras la alerta de un perro de la División Canina entrenado para detectar la presencia o contaminación de un arma de fuego o sustancias

---

[4] "[L]a naturaleza in rem de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo". <u>Carlo v. Srio. de Justicia</u>, 107 DPR 356, 362 (1978).

controladas, un agente de la policía se acercó a un vehículo de motor y pudo observar una cartera cerrada que por su silueta aparentaba contener un arma de fuego. Sin embargo, y según los documentos provistos por el Gobierno, en la cartera no había una pistola, sino una bolsita pequeña con picadura de marihuana. Tras este hallazgo, se realizó una prueba de campo —la cual, dicho sea de paso, no detalla análisis químico alguno— y el Gobierno procedió a confiscar el vehículo de motor.

En respuesta, los peticionarios, en calidad de aseguradores del carro, impugnaron en los tribunales la confiscación. En síntesis, expusieron que, a pesar de que la Policía de Puerto Rico ocupó y, posteriormente, el Gobierno confiscó el vehículo de motor por una alegada violación al Art. 512 de la Ley de sustancias controladas, Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2512, nunca se presentaron cargos criminales contra el dueño del carro por haber incurrido en la alegada violación. Resaltaron que, dado que el vehículo confiscado es, por su propia naturaleza, un bien lícito, no procedía la confiscación en ausencia de una condena.

Por su parte, el Gobierno defendió la legalidad de la confiscación. Para ello, adujo que, a tenor con el Art. 9 de la Ley de Confiscaciones, supra, ostenta la facultad para confiscar una propiedad si esta fue utilizada en violación a la Ley de Sustancias Controladas, supra. Esto,

independientemente de si se presentaron cargos criminales por tal violación en contra de persona alguna.

A raíz de lo anterior, la demanda de impugnación debió ser declarada con lugar, tal y como lo hizo el Tribunal de Primera Instancia y el Tribunal de Apelaciones confirmó. Esto, pues, según adelanté, la falta de una condena en el proceso penal veda la confiscación por la vía civil de un bien lícito.

Obviando la Ley de Confiscaciones, supra, así como los precedentes de este Tribunal, la Opinión mayoritaria resuelve que la "confiscación civil puede prevalecer aun cuando el Gobierno no haya presentado cargo alguno", pues "[l]a Ley de Confiscaciones, supra, expresamente dispone en su Art. 8 que el proceso de confiscación será independiente de cualquier otro procedimiento penal, civil o administrativo sobre los mismos hechos".[5] **Esto es insostenible y, además, tiene el potencial de transgredir múltiples garantías constitucionales.**

En primer lugar, conviene repasar qué es lo que dispone el Art. 8 de la Ley de Confiscaciones, supra, y, específicamente, cómo ha sido la interpretación por parte de este Tribunal de la norma allí contenida. Veamos.

Según reseñáramos, el Art. 8 de la Ley de Confiscaciones, supra, dispone que:

> El proceso de confiscación será uno civil dirigido contra los bienes e

---

[5]Opinión mayoritaria, pág. 16.

independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado.

De lo anterior surge la independencia entre los procesos **y nada más**.[6] Nótese que esta controversia no

---

[6]Resáltese que la disposición vigente, pero no aplicable a los hechos ante nuestra consideración por ser de aplicación prospectiva, añade, en su parte pertinente, lo siguiente:

Los procesos de confiscación bajo esta Ley podrán llevarse a cabo y culminarse antes de que se acuse, se declare culpable o absuelva al acusado. Debido al carácter civil del proceso, la culpabilidad o inocencia del acusado no deberá tomarse en cuenta en el proceso de confiscación, solo deberá tomarse en cuenta la adjudicación de los hechos en sus méritos. Lo determinante en este proceso será si el bien en cuestión fue utilizado en la comisión de un delito independientemente del resultado de la acción criminal o de alguna otra naturaleza.

Esta enmienda, introducida por la Ley Núm. 287-2018, no altera nuestra conclusión de que la falta de presentación de cargos o la absolución en un proceso criminal tiene el efecto de que no proceda la confiscación civil de un bien inherentemente lícito. Nótese, pues, que lo añadido preceptúa que el proceso civil de confiscación podrá llevarse a cabo y culminarse antes de que se acuse, declare culpable o absuelva al acusado. Por otra parte, y muy a pesar de lo dispuesto a los efectos de que la culpabilidad o inocencia del acusado no deberá tomarse en cuenta en el proceso de confiscación civil, entendemos que esto, igualmente, establece la indispensabilidad de que haya un proceso penal. Sin embargo, adelantamos que la enmienda realizada se ciñe principalmente a la aplicabilidad de la doctrina de impedimento colateral por sentencia. **Mas, en la práctica, potencialmente trasciende la realidad de lo que es válido constitucionalmente y, particularmente, nuestros pronunciamientos jurisprudenciales al respecto.**

representa la primera ocasión que este Tribunal se enfrenta a tal ficción, la cual pretende divorciar ambos procesos entre sí. Ahora bien, previo a adentrarnos en nuestra jurisprudencia interpretativa, estimo adecuado plasmar que, incluso, la Convención Constituyente mostró preocupaciones con el carácter punitivo de las confiscaciones y la separación ficticia que hoy una Mayoría imparte a ambos procesos de confiscación.[7]

Particularmente, el delegado González Blanes, al proponer una enmienda,[8] expresó lo siguiente:

> **<u>La cuestión de la confiscación tiene el carácter de penalidad. Es punitivo</u>**.
>
> […]
>
> **<u>Nuestra [Asamblea] Legislativa ha creído propio, en distintas ocasiones, hacer una confiscación con propiedad y bienes [que] nada tienen que ver con el delito, como un castigo adicional al delincuente.</u>** Y así, por ejemplo, en el caso de bebidas, pues todo aquello que [se] utilice como medio de transporte, sea caballo, carreta, automóvil, tren, lo que fuere, **<u>se confisca como una pena adicional</u>**.

---

[7]Véase, Diario de Sesiones de la Convención Constituyente 1914-1930. Si bien la discusión principal sobre el particular estuvo predicada propiamente en la confiscación criminal, lo expuesto claramente es extensivo al contexto de las confiscaciones tal y como se preconciben en la actualidad, pues se mantiene la preocupación neurálgica de los delegados, a saber: la confiscación de bienes sin la concurrencia de una convicción penal.

[8]En suma, la enmienda propuesta buscaba que el Gobierno no pudiese confiscar bienes lícitos en ausencia de una sentencia condenatoria, salvo en casos de piezas de evidencia necesarias para la comprobación del delito o, por lo obvio, bienes ilícitos <u>per se</u>.

A eso es a lo que viene la enmienda. Todavía nosotros no queremos ser tan revolucionarios como para decir que estas confiscaciones no tienen razón de ser ya y las consentimos, **pero por lo menos donde haya habido una formulación de causa y una sentencia condenatoria. Que no se vea a una persona expuesta a ser privada de su propiedad, sin que se le haya formulado causa. Que no se vea a una persona expuesta a ser privada de su propiedad, sin una sentencia condenatoria. ¿Por qué se han de confiscar bienes, si no hay formación de causa y la sentencia condenatoria?**[9]

Incluso, el mayor opositor a tal enmienda avaló que lo que ocurre en el proceso criminal tiene efectos en el proceso de confiscación por la vía civil. En palabras del delegado Alvarado: **"[e]l hecho de que se declare absuelto o culpable en el juicio al acusado, es sencillamente un**

---

[9] (Negrillas suplidas). Íd., pág. 1923. Más adelante, el delegado Soto, en apoyo, expresó lo siguiente:

De suerte que, establecida esa enmienda, me parece a mí que procede en absoluto votar la enmienda propuesta por el señor González Blanes, porque de lo contrario, señores, estamos dando lugar, o daremos lugar a que se pueda castigar a una persona a priori. Es decir, **se le impone un castigo sin haberse siquiera formulado causa en contra suya,** sin que haya... [que] se le pueda imponer un castigo, en ese caso **sin que haya habido acusación y menos sin que haya habido un juicio y una convicción.** Y yo pregunto a los señores de la Convención: **¿eso es justo, eso es democrático?** (Negrillas suplidas). Íd., pág. 1925.

**hecho a considerarse en la acción civil en la cual se ventila la legalidad o ilegalidad de la confiscación".**[10]

Como puede apreciarse, existen unas garantías constitucionales firmemente establecidas que la Asamblea Legislativa no puede vulnerar y que este Tribunal no debe ignorar. En ese sentido, sostengo que las protecciones constitucionales en contra de las confiscaciones del Gobierno tienen prevalencia sobre cualquier intento de la Asamblea Legislativa de minar tales garantías, ya sea con carácter retroactivo o prospectivo.

Bajo este contexto, y debido al carácter punitivo característico de la confiscación civil <u>in rem</u>, este Tribunal ha rechazado la inconexión pretendida entre el proceso civil y la causa penal. En su lugar, expresamente hemos atado el proceso penal a la validez del proceso de confiscación civil, pues "**[e]n nuestro ordenamiento penal, esta ficción jurídica no convierte la propiedad incautada en autora del delito, como tampoco permite que se exonere a la persona acusada pero sí se declare culpable al objeto**". (Negrillas suplidas). <u>Coop. Seg. Múlt. v. E.L.A.</u>, supra, pág. 680. Ello, máxime, en consideración al carácter punitivo de las confiscaciones, a las garantías constitucionales implicadas y, particularmente, con respeto a los dictados de la justicia y la razón natural.

---

[10] (Negrillas suplidas). Íd., pág. 1918.

Así lo hicimos en los siguientes casos: Downs v. Porrata, Fiscal, 76 DPR 611, 617 (1964) **(pautando que un indulto total, pleno e incondicional otorgado a un imputado de delito conllevaba la obligación de devolver las propiedades confiscadas)**; Carlo v. Srio. de Justicia, supra, págs. 363-364 **(decretando la desestimación de la confiscación en el contexto civil por razón de la absolución en los méritos en el proceso penal)**; Del Toro Lugo v. E.L.A., supra, págs. 992-993, 997 **(determinando la improcedencia de la confiscación civil de un vehículo tras una determinación final y firme de no causa para acusar en el plano criminal luego de la supresión de la evidencia ocupada por un registro ilegal)**; First Bank, Univ. Ins. Co. v. E.L.A., 156 DPR 77, 84 (2002) **(precisando que, aunque no se encontró causa probable para acusar contra el conductor del vehículo, ello no impedía la confiscación pues el pasajero se declaró culpable del delito que motivó tal confiscación)**; Suárez v. E.L.A., 162 DPR 43, 64 (2004) **(resolviendo que la desestimación de un proceso penal por violación a los términos de juicio rápido en etapa de vista preliminar impedía la continuación del proceso civil)**; Ford Motor v. E.L.A., 174 DPR 735, 747-748 (2008) y Díaz Morales v. Depto. de Justicia, 174 DPR 956, 965-966 (2008) (Per curiam) **(dictando que el archivo o sobreseimiento de la acusación o falta criminal al amparo de un proceso de desvío impide la confiscación del bien por la vía civil)**, y Coop. Seg. Múlt. v. E.L.A., supra,

pág. 681 **(estableciendo que la muerte de la persona imputada extinguía la acción penal y, por consiguiente, también el proceso de confiscación civil).**

Estas interpretaciones han sido, en su mayoría, dentro del contexto de la aplicación de la doctrina de impedimento colateral por sentencia. Además, en ese análisis hemos sopesado las consideraciones de índole constitucional, tanto locales como federales,[11] que operan combinadamente a la par con dicha doctrina.

Como cuestión de hecho, esta filosofía doctrinal fue reafirmada por nuestro precedente más reciente sobre la materia. Véase, Figueroa Santiago et als. v. ELA, 207 DPR 923 (2021). En el caso precitado, más allá de resaltar las aspiraciones contenidas en la exposición de motivos y el carácter independiente entre el proceso civil y penal que consigna la Ley de Confiscaciones, supra, se reafirmaron algunos de los precedentes antes citados. Ello, con el fin de determinar si el registro de una alegación de culpabilidad por un delito menos grave impedía la

---

[11]Véase, Plymouth Sedan v. Pennsylvania, 380 US 693 (1965) (aplicándose las garantías constitucionales contra los registros irrazonables en casos criminales a un proceso de confiscación civil); United States v. One Assortment of 89 Firearms, 465 US 354, 362 (1984) (resolviéndose que las salvaguardas de la Octava Enmienda, las cuales prohíben los castigos crueles e inusitados, operan en los casos civiles de confiscación dado el propósito punitivo característico de este último de castigar por la conducta delictiva). Véase, además, Bco. Bilbao Vizcaya et al. v. ELA et al., supra (Voto particular disidente del Juez Asociado Señor Estrella Martínez).

continuación del procedimiento civil de confiscación. Nótese que, a fin de cuentas, se mantuvo el mismo hilo conductor: analizar si hubo una convicción por un delito grave o menos grave que, en virtud del Art. 9 de la Ley de Confiscaciones, supra, autoriza la confiscación civil.[12] **Lo anterior demuestra cómo, aún bajo el ordenamiento vigente, este Tribunal sigue condicionando la validez de la confiscación civil a la luz de si, en el contexto penal, existe una convicción penal.**

En ese sentido, y tal y como reiteramos en Coop. Seg. Mult. v. E.L.A., supra, la persona a quien se le pretende confiscar un bien lícito está cobijada por la presunción de inocencia, por lo que, en ausencia de una convicción penal, también "se extingue la acción confiscatoria". Íd., pág. 681. Concluir lo contrario, conllevaría permitir "la confiscación de un bien sin que nadie sea convicto de delito, extendiendo irrazonablemente la ficción jurídica en la que se funda la acción, al extremo de que una 'cosa',

_____

[12]Particularmente, el Art. 9 de la ley precitada establece que "[e]stará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación". Íd.

Adviértase que, al igual que en el caso de autos, la controversia se analizó a la luz de la actual Ley de Confiscaciones, supra. **Pese a ello, sostengo mi objeción con respecto a que, en el caso precitado, no procedía la confiscación por razón de que la condena resultó ser por un delito menos grave que no autorizaba la confiscación.** Véase, Figueroa Santiago et als. v. ELA, supra, pág. 937 (Opinión disidente del Juez Asociado Señor Estrella Martínez).

por sí misma, sería culpable de la comisión de un acto

delictivo. **Nuestro ordenamiento jurídico no permite tal**

**incongruencia".**[13] (Negrillas suplidas). Íd

A fin de cuentas, tal y como expresó el profesor Jorge

Farinacci Fernós:

> **Resulta evidente la necesidad constitucional de vincular la acción penal al proceso de confiscación civil.** [...] Lo cierto es que el poder del Estado para confiscar propiedad perteneciente a un ciudadano requiere una justificación poderosa, particularmente cuando no habrá compensación. En estos casos, la justificación ha sido el que la propiedad fue utilizada en un acto delictivo, independientemente de quién lo hizo o si esta resulta convicta del delito. **Pero, la ausencia de convicción en lo penal debilita la racionalización de la confiscación, sobre todo cuando tendría como efecto neto el castigar a un ciudadano por la comisión de un delito sin demostrar**

_____

[13]Nótese que la Opinión de este Tribunal en <u>Coop. Seg. Múlt. v. E.L.A.</u>, supra, es sumamente importante, pues:

> En primer lugar, porque analiza de forma grupal las decisiones previas del Tribunal Supremo sobre el asunto **e** <u>**identifica una línea consistente**</u>: **el vínculo férreo entre la acción penal y el proceso civil de confiscación.** Es decir, dicha opinión anuncia la existencia de una norma que yacía callada en varias decisiones previas y la articula expresamente. En segundo lugar, **no cabe duda [de] que esta norma** <u>**es de naturaleza**</u> <u>**constitucional**</u>. **Por tanto, no depende únicamente de la voluntad legislativa.** (Negrillas suplidas y énfasis suplido en el original).

J. Farinacci Fenós, <u>Derecho constitucional</u>, 86 Rev. Jur. UPR 662, 680.

**ello más allá de duda razonable en un proceso criminal,** mediante la confiscación de su propiedad. Nuestro ordenamiento constitucional no permite ese desenlace.[14]

Sin embargo, la Opinión mayoritaria se aleja de tales preceptos y ahora rechaza que la confiscación civil de un bien lícito presupone para su validez una condena criminal. Con ello, erróneamente se disocia la codependencia entre el proceso penal y su efecto en el procedimiento civil de confiscación. Además, se inmuniza al Gobierno con un cheque en blanco en cuanto a la confiscación de bienes por la vía civil.[15]

Esto es incompatible con la Ley de Confiscaciones, supra, y, además, atenta directamente contra diversas garantías de la Constitución local y federal. Lo anterior, máxime, cuando la Corte Suprema federal ha determinado que el Gobierno debe garantizar que los procesos de confiscación civil in rem sean cónsonos con la protección de la Octava Enmienda —la cual prohíbe la imposición de multas excesivas—, por lo que debe existir una **proporción**

---

[14] (Negrillas suplidas y énfasis en el original omitido). Farinacci Fernós, supra, págs. 680-681.

[15] Véase el Informe del Institute of Justice: Frustrating, Corrupt, Unfair, Civil Fortfeiture in the Words of its Victims, https://ij.org/wp-content/uploads/2021/09/Frustrating-Corrupt-Unfair_Civil-Forfeiture-in-the-Words-of-Its-Victims-2.pdf, en torno a los efectos de reconocer la plenitud de garantías constitucionales a los ciudadanos ante esa modalidad de confiscación.

**razonable** entre lo confiscado y la conducta delictiva que motiva la confiscación.[16]

Resáltese que esta protección constitucional cobra aún más importancia tras la determinación reciente de la Corte Suprema federal en Timbs v. Indiana, 139 S. Ct. 682, 586 US ___ (2019), mediante el cual se decretó la extensión de la Octava Enmienda a los Estados por virtud de la Enmienda Catorce. Los hechos de este caso se suscitaron en el contexto de una confiscación civil in rem, fortaleciéndose así la acepción de que este tipo de confiscaciones con matices punitivos está sujeta a ciertos límites constitucionales.[17]

**En definitiva, reitero que la falta de una condena en el ámbito penal priva la confiscación civil de un bien lícito y, por vulnerar múltiples garantías constitucionales, es inconstitucional.**[18] Ahora bien, tras determinarse lo contrario, sostengo que la Opinión

---

[16]Véase, Austin v. United States, 509 US 602 (1993); E. L. Chiesa Aponte, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. UPR 83, 123 (1996).

[17]Véase, J. Farinacci Fernós, Jurisprudencia del Tribunal Supremo de los Estados Unidos (2018-2019), 54 Rev. Jur. U. Inter. PR 237 (discutiendo Timbs v. Indiana, supra, y los efectos que tiene esta decisión en Puerto Rico). Véase, además, W. Hottot, What is an excessive fine? Seven questions to ask after Timbs, 72 Ala. L. Rev. 581 (2021).

[18]Véase, Leonard v. Texas; 137 S.Ct. 847 (2017) (Statement of Justice Thomas respecting the denial of certiorari) (criticando que la concepción actual de las confiscaciones civiles in rem y destacando que pueden ser inconstitucionales).

mayoritaria adolece de un marco regulador que ilustre a los tribunales sobre cómo evaluar una controversia de esta índole a fin de no obviar las limitaciones constitucionales implicadas.[19]

_____

[19]A modo de ejemplo, bajo el prisma mayoritario, al menos se debió adoptar un análisis similar al implementado por la Corte Suprema de Pennsylvania en _Commonwealth v. 1997 Chevrolet and Contents Seized from Young_, 639 Pa. 239 (2017). En este, se delineó un estándar de dos (2) partes para evaluar la constitucionalidad de la propiedad confiscada civilmente. En primer lugar, se debe evaluar la relación o utilidad (_instrumentality analysis_) entre la propiedad confiscada y la ofensa cometida.

Al determinar tal relación, los tribunales deben considerar:

> 1) whether the property was uniquely important to the success of the illegal activity;
> (2) whether the use of the property was deliberate and planned or was merely incidental and fortuitous to the illegal enterprise;
> (3) whether the illegal use of the property was an isolated event or repeated;
> (4) whether the purpose of acquiring, maintaining or using the property was to carry out the offense;
> (5) whether the illegal use of the property was extensive spatially and/or temporally; and
> (6) whether the property is divisible with respect to the subject of forfeiture, allowing forfeiture of only that discrete property which has a significant relationship to the underlying offense. Íd., pág. 302.

Si el bien confiscado no cumple con ese análisis, esto dispone de la controversia y, por consiguiente, debe decretarse su inconstitucionalidad. Íd. De lo contrario, los tribunales deben evaluar, en segundo lugar, si existe proporcionalidad entre el valor de la propiedad con respecto a la gravedad del delito subyacente. Los factores, entre otros, a ser considerados en la evaluación del valor de la propiedad son:

Solo de este modo se garantizaría que el Gobierno no sustituya los procesos criminales y su peso probatorio por un sistema civil de confiscación donde la culpabilidad se pruebe mediante preponderancia de la prueba, sin garantías de debido proceso de ley ni presunción de inocencia,

_____

> (1) the fair market value of the property;
> (2) the subjective value of the property taking into account whether the property is a family residence or if the property is essential to the owner's livelihood;
> (3) the harm forfeiture would bring to the owner or innocent third parties; and
> (4) whether the forfeiture would deprive the property owner of his or her livelihood. Íd.

Asimismo, entre los factores a considerar para medir la gravedad de la ofensa, se incluyen:

> (1) the nature of the underlying offense;
> (2) the relation of the violation of the offense to any other illegal activity and whether the offender fit into the class of persons for whom the offense was designed should be considered;
> (3) the maximum authorized penalty as compared to the actual penalty imposed upon the criminal offender;
> (4) the regularity of the criminal conduct—whether the illegal acts were isolated or frequent, constituting a pattern of misbehavior;
> (5) the actual harm resulting from the crime charged, beyond a generalized harm to society; and
> (6) the culpability of the property owner. Íd., págs. 302-303.

**De no ser proporcional, la confiscación civil debe declararse inconstitucional.**

violatorio de la incautación de la propiedad sin justa compensación y carente de protecciones contra los registros y allanamientos irrazonables.

**III**

De ahora en adelante, el Gobierno no tiene límites en cuanto a qué puede confiscarle a una persona **sin la necesidad de encausarlo por la vía criminal**. Indudablemente, esto desencadenará en la utilización masiva del proceso de confiscación civil con el fin de castigar con inmediatez y sin impunidad, en lugar de proseguir la ruta más dificultosa pero garantizadora de derechos constitucionales: la confiscación por la vía criminal.

Peor aún, pues, ante el carácter administrativo del proceso, y particularmente debido a las escasas ocasiones en que las confiscaciones son impugnadas judicialmente, el Gobierno se beneficiará de la confiscación de los derechos constitucionales de la ciudadanía con poca o ninguna intervención de los tribunales. Por ello, **disiento**.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Seguros
Múltiples de Puerto Rico
y Oriental Bank

      Recurridos

                               CC-2021-0219   *Certiorari*

        v.

Estado Libre Asociado de
Puerto Rico y otros

      Peticionarios

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 22 de junio de 2022.

Ausente todo proceso criminal por hechos que motivaron la confiscación de cierto vehículo de motor, ¿procede que el Estado prive de su propiedad a un ciudadano o a una ciudadana? La respuesta a la anterior interrogante es sencilla: **NO**.

Y es que, una contestación en contrario tendría el grave efecto de contravenir los derechos más esenciales que garantiza la Constitución del Estado Libre Asociado de Puerto Rico, así como aquellos consagrados en la Constitución de Estados Unidos de América. De eso, lamentablemente, trata este caso.

Ante esa realidad, disentimos del curso de acción que una mayoría de este Tribunal hoy emprende al

revocar -- *sub silentio* -- todo un extenso andamiaje jurisprudencial cimentado sobre las más básicas garantías constitucionales que procuran el derecho fundamental de todo ser humano al disfrute de su propiedad y a que éste o ésta no pueda ser privado de la misma sin una justa compensación y de acuerdo con las formas provistas por ley. Lo anterior, al erróneamente resolver que la ausencia de presentación de cargos criminales en contra de persona alguna, por hechos que motivaron la confiscación de determinada propiedad, no invalida la acción confiscatoria del Estado sobre un objeto lícito. Veamos.

I.

Los hechos medulares que dieron margen al presente litigio no estan en controveria. Allá para el 3 de mayo de 2018, la Cooperativa de Seguros Múltiples de Puerto Rico (en adelante, "Cooperativa") y Oriental Bank (en adelante, "Oriental") (en conjunto, "los recurridos") presentaron una *Demanda* sobre impugnación de confiscación en contra del Estado Libre Asociado de Puerto Rico (en adelante, "ELA") ante el Tribunal de Primera Instancia. Adujeron, en síntesis, que el 23 de marzo de 2018 la Policía de Puerto Rico ocupó y confiscó un vehículo de motor por presunta violación al Art. 512 de la Ley de Sustancias Controladas de Puerto Rico, *infra*, relacionado a hechos ocurridos el mismo día de la referida ocupación en el Municipio de San Juan.

Manifestaron, además, que el Sr. Vicente Pizarro Soler (en adelante, "señor Pizarro Soler") era el dueño registral del vehículo de motor confiscado, el cual obtuvo mediante un préstamo financiero otorgado por Oriental y asegurado por una póliza de seguro emitida por la Cooperativa. Añadieron que esta última contenía una cubierta para el riesgo de confiscación que la obligaba a iniciar la correspondiente impugnación a favor de la mencionada institución financiera. Asimismo, aseguraron el vehículo de motor objeto de la presente controversia no fue utilizado en violación de ley alguna y que la ocupación y la confiscación de éste fue en contra de los derechos constitucionales del señor Pizarro Soler, dueño registral del vehículo de motor.

Sobre esto último, los recurridos sostuvieron la naturaleza criminal-punitiva de la Ley Uniforme de Confiscaciones de 2011, *infra*, por la referida confiscación tratarse de un castigo adicional al autor de la comisión de un delito. En esa línea, también señalaron que la actuación del Estado era inconstitucional toda vez que se perjudicó la propiedad privada de una parte inocente para el uso público sin justa compensación de acuerdo con la ley y el debido proceso de ley. Sumaron a su reclamo que la presunta evidencia que dio paso a la confiscación se ocupó sin mediar una orden de arresto, de registro o de allanamiento. Por todo ello, solicitaron la nulidad de

la confiscación más el pago de costas, gastos y honorarios de abogado.

Enterado de lo anterior, el ELA contestó la mencionada demanda. En resumen, negó las alegaciones en su contra, defendió la constitucionalidad del proceso de confiscación y destacó su naturaleza *in rem* e independencia de cualquier otro procedimiento penal, administrativo o proceso relacionado con los mismos hechos, así como la presunción de legalidad y corrección de la confiscación. Al respecto, indicó que le correspondía a la parte demandante -- aquí recurridos -- derrotar dicha presunción. Por último, subrayó que, debido a que la acción estatal se dirigía en contra de la cosa misma, la culpabilidad o inocencia del propietario era irrelevante en cuanto a la procedencia o no de la confiscación civil.

Posteriormente, los recurridos presentaron una *Moción solicitando sentencia sumaria*. En ésta, plantearon que, como parte del proceso de descubrimiento de prueba, advinieron en conocimiento de que no se habían presentado cargos criminales por los hechos que motivaron la confiscación objeto de la presente controversia. **Por eso, argumentaron que, ante la ausencia de cargos criminales en contra de persona alguna, en derecho, no procedía la confiscación de propiedad privada al amparo de la Ley Uniforme de Confiscaciones de 2011,** *infra*.

Oportunamente, el ELA se opuso a la resolución sumaria del pleito y enfatizó que los anejos incluidos en su moción (una orden de confiscación, una declaración jurada prestada por un agente de la División de Drogas y Armas de la Policía[1] y una orden de registro y allanamiento suscrita por un juez) demostraban que no existía controversia en cuanto a la ocupación del vehículo de motor de referencia y al hallazgo de cierta sustancia controlada en su interior, la cual resultó ser "picadura de marihuana", según la prueba de campo realizada. Así, el ELA sostuvo que la ausencia de la presentación de cargos criminales en relación con los hechos que motivaron la confiscación no incidía en la validez de la confiscación del vehículo de motor. Además, insistió en que la presunción de legalidad y corrección de la confiscación no había sido derrotada.

---

[1] De la Declaración Jurada del agente de la Policía, se desprende que, durante una ronda preventiva por un "área de alta incidencia criminal en el Municipio de San Juan", un can -- junto a otro agente de la Policía -- marcó el vehículo de motor en controversia al sentarse frente a la puerta frontal del pasajero como señal de que había detectado la existencia de armas de fuego o sustancias controladas. El agente de la Policía continuó relatando que, al percatarse de ello, se acercó al vehículo de motor y observó que encima del asiento delantero del lado del pasajero había una cartera negra que, aunque estaba cerrada, tenía la silueta de lo que, a su juicio, aparentaba ser un arma de fuego tipo pistola. Añadió que procedió a realizar gestiones para localizar al dueño del vehículo de motor, pero no tuvo éxito por lo que, tras la llegada de otro agente de la Policía, procedió a tomar fotos, sellar y ocupar el mencionado vehículo para la correspondiente investigación y, posteriormente, consultar con un fiscal para diligenciar una orden de allanamiento. Véase, Apéndice del *certiorari*, págs. 103-104. De los documentos que acompañaron la oposición a la solicitud de sentencia sumaria presentada por el ELA, también surge un reporte policiaco sobre la prueba de campo en donde se indica que en el vehículo de motor objeto del presente litigio se halló una "bolsita plástica transparente de cierre a presión conteniendo picadura de marihuana". Véase, Apéndice del *certiorari*, pág. 107.

Así las cosas, el foro primario dictó una *Sentencia* mediante la cual declaró con lugar tanto la solicitud de sentencia sumaria como la *Demanda* de impugnación presentadas por los recurridos. **De entrada, indicó que este Tribunal había optado por distinguir entre propiedades que, por su naturaleza, eran ilícitas de aquellas que, a pesar de poderse utilizar para la comisión de un acto delictivo, eran lícitas y útiles.**

Con ello en mente, y tras un análisis de los estatutos y la extensa jurisprudencia aplicable, el Tribunal de Primera Instancia resolvió que, para atender la controversia ante su consideración, lo determinante era que la figura *in rem* autorizaba al Estado a tomar una propiedad privada que de alguna forma estuviese relacionada o fuera producto de la comisión de un delito cometido por una persona, independientemente de su relación con la propiedad en cuestión. **De modo que, tras dicho foro aplicar los dictados de la razón natural a los hechos del caso de epígrafe, concluyó que la confiscación civil no podía subsistir en virtud de su naturaleza *in rem* o mandato legislativo en ausencia de una acción criminal donde se ventilara la culpabilidad o inocencia del autor del delito imputado.** Es decir, que la cosa en sí misma no podía ser coautora del delito por lo que, en ausencia de culpa sobre autor alguno del delito, ésta no podía ser objeto de confiscación. Ante ello, el foro primario ordenó al ELA a devolver el vehículo de motor

confiscado. En desacuerdo, el Estado solicitó la reconsideración, pero ésta fue denegada.

Insatisfecho con lo sentenciado por el foro primario, el ELA -- representado por la Oficina del Procurador General -- recurrió ante el Tribunal de Apelaciones en donde reiteró sus anteriores argumentos. En respuesta, los aquí recurridos presentaron el correspondiente alegato en oposición ante dicho foro. Tras considerar los planteamientos de ambas partes, el 18 de diciembre de 2020 el foro apelativo intermedio emitió una *Sentencia* mediante la cual confirmó la determinación del Tribunal de Primera Instancia. **En esencia, el Tribunal de Apelaciones concluyó que la pretensión del ELA de quedarse con la propiedad privada de un ciudadano, a quien ni siquiera le han presentado cargos criminales, era contraria a derecho.** El Estado solicitó la reconsideración, pero dicho foro la denegó.

Inconforme con el proceder de los foros *a quo*, el ELA presentó ante nos el recurso que nos ocupa. En su escrito, señala que el foro apelativo intermedio erró al confirmar foro primario, pues insiste en que no es necesario iniciar un procedimiento criminal en contra de persona alguna para que proceda la confiscación civil. Así también, acentúa su argumento respecto a que la presunción de legalidad que tiene la actuación del Estado en el caso de autos debe ser rebatida por los recurridos y que eso no ha ocurrido aquí.

Por su parte, los recurridos comparecieron mediante alegato en oposición. **En suma, sostienen que debe confirmarse lo dictaminado por los foros recurridos toda vez que la confiscación del vehículo de motor en el presente litigio no está sustenta en la culpabilidad de persona alguna y no hay posibilidad de contar con certeza jurídica que establezca el vínculo de la propiedad confiscada con un delito probado, sumado a la naturaleza legal del objeto confiscado, así como el carácter punitivo de la Ley Uniforme de Confiscaciones de 2011,** *infra*.

Trabada así la controversia, y con el beneficio de la comparecencia de ambas partes en el litigio, una mayoría de esta Curia resuelve que la falta de presentación de cargos criminales por los hechos que motivaron la confiscación impugnada en el presente litigio no invalida automáticamente la acción confiscatoria del Estado sobre un objeto lícito. Como adelantamos, de tan lamentable proceder enérgicamente disentimos. Nos explicamos.

II.

A.

Como es sabido, la Quinta Enmienda de la Constitución de Estados Unidos de América prescribe que ninguna persona será privada de sus bienes sin el debido proceso de ley ni se le podrá expropiar su propiedad para

destinarla a uso público sin la justa compensación.[2]
Enmda. V, Const. EE.UU., LPRA, Tomo 1. Análogamente, el
Artículo II, Sección 7, de la Constitución del Estado
Libre Asociado de Puerto Rico consagra, en lo pertinente,
el derecho fundamental del ser humano al disfrute de su
propiedad y que ninguna persona será privada de su
propiedad sin el debido proceso de ley. Art. II, Sec. 7,
Const. ELA, LPRA, Tomo 1. Cónsono con ello, el Artículo
II, Sección 9, de nuestra Carta Magna prohíbe que el
Estado tome propiedad privada para uso público a no ser
que medie el pago de una justa compensación y de acuerdo
con la forma provista por ley Art. II, Sec. 9, Const.
ELA, LPRA, Tomo 1.

B.

Con lo anterior en mente, este Tribunal ha
sentenciado que la confiscación de la propiedad privada
se ha autorizado como una "excepción al mandato
constitucional que prohíbe tomar propiedad privada para
fines públicos sin justa compensación". *Coop. Seg. Múlt.
v. E.L.A.*, 180 DPR 655, 662-663 (2011). Al respecto, en
innumerables ocasiones, hemos expresado que, "la
confiscación es el acto de ocupación que lleva [acabo]
el Estado de todo derecho de propiedad sobre cualquier
bien que haya sido utilizado en relación a la comisión

---

[2] El texto original lee como sigue: "No person shall […] be deprived
of life, liberty, or property, without due process of law; nor shall
private property be taken for public use, without just
compensation." Enmda. V, Const. EE.UU., LPRA, Tomo 1.

de ciertos delitos". *Ford Motor v. E.L.A.*, 174 DPR 735, 741 (2008). Véase, también, *Reliable Financial v. ELA*, 197 DPR 289, 296 (2017); *Centeno Rodríguez v. E.L.A.*, 170 DPR 907, 912-913 (2007); *Suárez v. E.L.A.*, 162 DPR 43, 51 (2004); *Del Toro Lugo v. E.L.A.*, 136 DPR 973, 980-981 (1994).

En esa dirección, también hemos dicho que, tanto en la esfera federal como en la local, el proceso de confiscación de bienes utilizados en actividad delictiva ocurre en dos modalidades. La primera modalidad es la confiscación criminal, la cual se realiza como parte de una acción *in personam* o en contra de la persona imputada de delito en un caso criminal en el cual, de encontrársele culpable, se le impone la confiscación de los bienes como una sanción adicional. *Coop. Seg. Múlt. v. E.L.A.*, *supra*, pág. 664; *Suárez v. E.L.A.*, *supra*, págs. 51-52; *Del Toro Lugo v. E.L.A.*, *supra*, pág. 981. Ello, pues "[l]a confiscación criminal forma parte integral del procedimiento criminal [en] contra [d]el propietario de la cosa a ser incautada, y la convicción de éste es, precisamente, el fundamento que origina la confiscación". *Del Toro Lugo v. E.L.A.*, *supra*, págs. 981-982.

**La segunda modalidad es la confiscación civil, conocida como una acción *in rem*, que persigue la propiedad confiscada por el mal uso que se le ha dado.** *Coop. Seg. Múlt. v. E.L.A.*, *supra*, pág. 664; *Suárez v. E.L.A.*, *supra*, pág. 52; *Del Toro Lugo v. E.L.A.*, *supra*,

pág. 982. Esta modalidad opera bajo una ficción jurídica mediante la cual se culpa a la cosa misma por su participación en la comisión de determinado delito *Coop. Seg. Múlt. v. E.L.A.*, *supra*, pág. 666; *Suárez v. E.L.A.*, *supra*; *Del Toro Lugo v. E.L.A.*, *supra*.

En esa dirección, la confiscación civil se impone inicialmente como un remedio para el Estado, "en la medida en que se [remueve] de la sociedad un objeto peligroso o ilegal". *Del Toro Lugo v. E.L.A.*, *supra*, pág. 984, citando a *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984). De ahí que, como norma general, "la culpabilidad o inocencia del propietario [resulta] irrelevante en cuanto a la procedencia o no de la confiscación civil". *Del Toro Lugo v. E.L.A.*, *supra*, pág. 982.

**Para determinar si procede una confiscación civil, se debe evaluar lo siguiente: 1) si existe prueba suficiente y preponderante de que se cometió un delito y 2) si existe un nexo entre la comisión del delito y la propiedad confiscada.** *Suárez v. E.L.A.*, *supra*; *Del Toro Lugo v. E.L.A.*, *supra*, pág. 983; *General Motors Acceptance Corporation v. Brañuela*, 61 DPR 725 (1943). **Así pues, la conexión entre la propiedad confiscada y el delito imputado debe quedar establecido por preponderancia de la prueba o, de lo contrario, dicha propiedad "mantiene su naturaleza inocente".** *Coop. Seg. Mult. v. E.L.A.*, *supra*, pág. 671.

Ahora bien, en escenarios donde la confiscación de una propiedad privada ocurre por su vínculo con la comisión de un delito, la estricta separación entre las modalidades antes descritas se evalúa caso a caso y, en ocasiones, se atenúa. Eso es así, pues, tanto el Máximo Foro federal como este Tribunal, han señalado que esta regla extrema -- la cual divorcia el proceso de confiscación civil del criminal -- surgió en un momento histórico "producto de la legítima preocupación del Estado con la práctica de la piratería y el contrabando a principios del siglo XIX [por lo que] ha sido atemperada en el decurso del tiempo [ante] el recio surgimiento y difusión de las garantías de la Quinta Enmienda de la Constitución de los Estados Unidos contra más de un juicio por el mismo delito, la autoincriminación, la falta del debido proceso y la toma de propiedad privada para uso público, sin justa compensación". *Coop. Seg. Múlt. v. E.L.A.*, *supra*, págs. 665-666, citando a *Carlo v. Srio. de Justicia*, 107 DPR 356, 360 (1978).

Sobre el particular, es menester señalar que, esta deflación entre el espacio de la acción *in rem* y la *in personam* fue abordada por el Tribunal Supremo de Estados Unidos en el normativo caso de *One 1958 Plymouth Sedan v. Com. of Pa.*, 380 U.S. 693 (1965). En el referido caso, el Foro federal, tras aplicar las garantías constitucionales contra registros irrazonables, reconoció que, aunque en el litigio ante su consideración

la confiscación en cuestión tenía forma civil -- independiente y separada de la criminal --, el objetivo del estatuto bajo estudio, al igual que el proceso criminal, procuraba penalizar por la comisión de cierto delito.[3] En otras palabras, que aunque se trataba allí de un procedimiento *in rem*, el proceso de confiscación en estos escenarios era de naturaleza *cuasi-criminal* o punitiva y, en consecuencia, aplicaban las garantías constitucionales. En esa ocasión, también se dispuso que en estos casos se debía considerar la naturaleza de la propiedad confiscada, entiéndase si era en sí misma legal (por ejemplo, un vehículo de motor o un bien inmueble) o ilegal (por ejemplo, material de contrabando, narcóticos o alcohol no registrado). *Íd.*, págs. 698-699.[4]

El desarrollo del antes mencionado razonamiento quedó reafirmado posteriormente en casos como *United States v. One Assortment of 89 Firearms*, *supra*, y *Austin v. United States*, 509 U.S. 602, 621-622 (1993). De una lectura detenida de esa jurisprudencia, se desprende que, al evaluar este tipo de caso, **el Tribunal Supremo de Estados Unidos ha elaborado un estándar encaminado a**

---

[3] "We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal." *One 1958 Plymouth Sedan v. Com. of Pa.*, *supra*, pág. 697.

[4] **"There is nothing even remotely criminal in possessing an automobile.** It is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss." *Íd.*, pág. 699.

**determinar si el estatuto de confiscación *in rem* cumple un propósito remedial a beneficio del Estado o si, por el contrario, persigue un objetivo punitivo al castigar o imponer una pena adicional al propietario del bien objeto de confiscación.**

De configurarse este último escenario -- objetivo punitivo -- la confiscación, aunque civil en su forma, es una criminal por lo que deberán observarse las garantías constitucionales. *Íd*. Véase, también, *Timbs v. Indiana*, 139 S. Ct. 682, 690 (2019). En esa línea, el Máximo Foro federal también reiteró que, al emprender ese análisis, los tribunales deberán distinguir la naturaleza de la propiedad confiscada, así como el hecho de que, aunque los estatutos de confiscación constituyen un "poderoso instrumento para poner en vigor la legislación de sustancias controladas [entre otras], la intención del Congreso no fue privar a los propietarios inocentes de su propiedad". *Del Toro Lugo v. E.L.A.*, *supra*, págs. 985-986, citando a *U.S. v. James Daniel Good Real Property et al.*, 62 L.W. 4013 (1993).

Así pues, al repasar la jurisprudencia federal, en este Alto Foro hemos expresado que "la importancia histórica y la vigencia actual del interés privado que representa el derecho del propietario a mantener control sobre la propiedad y a estar libre de la interferencia gubernamental" son consideraciones que deben tenerse presente al adjudicar casos como el de epígrafe. *Del Toro*

*Lugo v. E.L.A.*, *supra*. **En ese sentido, lo que debe guiar el análisis "no es la naturaleza de la acción, sino el verdadero propósito del estatuto".** *Coop. Seg. Múlt. v. E.L.A.*, *supra*, pág. 664, citando a *Downs v. Porrata, Fiscal*, 76 DPR 611, 619 (1954). Como veremos, en Puerto Rico, las disposiciones legales en materia de confiscación han seguido igual razonamiento y nuestra jurisprudencia se ha desarrollado en una clara tendencia de interpretación restrictiva de los referidos estatutos.

III.

A.

Sabido es que, en el ordenamiento jurídico puertorriqueño, la autorización para que el Estado confisque la propiedad privada de un ciudadano o de una ciudadana en determinados escenarios está actualmente fijada en la Ley Núm. 119-2011, conocida como Ley Uniforme de Confiscaciones de 2011, (en adelante, "Ley Uniforme de Confiscaciones de 2011"), 34 LPRA sec. 1724 *et seq*. Este cuerpo de ley fue aprobado con el propósito de establecer el procedimiento a seguir en toda confiscación "con el beneficio y experiencia adquirida en la aplicación de la [Ley Uniforme de Confiscaciones de 1988[5]], y la [Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones de 1960[6]]". Exposición

---

[5] Ley Núm. 93 de 13 de julio de 1988, 34 LPRA ant. sec. 1723 *et seq*.
[6] Ley Núm. 39 de 4 de julio de 1960, 34 LPRA ants. secs. 1721-1722.

de Motivos de la Ley Núm. 119-2011 (2011 (Parte 2) Leyes de Puerto Rico 1761).

**De la Exposición de Motivo de la Ley Uniforme de Confiscaciones de 2011,** *supra*, **se desprende que este estatuto -- al igual que sus antecesores -- reconoce que "el acto de confiscación, debido al temor que infunde la pérdida de la propiedad, es un disuasivo a la actividad criminal que socava la paz y sosiego de nuestra sociedad".**[7] En aras de lograr lo anterior, en la referida disposición legal la Asamblea Legislativa precisó los requisitos que debían satisfacer las personas que impugnaran la confiscación.

En esa dirección, el Art. 2 de la Ley Uniforme de Confiscaciones de 2011, *supra*, pág. 1763, dispone que será la política pública del Estado Libre Asociado de Puerto Rico "crear mecanismos que faciliten y agilicen el proceso de confiscación de bienes muebles e inmuebles [que, a su vez, velen] por los derechos y reclamos de las personas afectadas por una confiscación". Asimismo, en el precitado artículo "se sostiene y reafirma la naturaleza [*in rem*] de las confiscaciones, independiente

---

[7] A modo de ejemplo, la Ley Uniforme de Confiscaciones de 1988, supra, expresaba que:

> La confiscación de los bienes que propician la comisión de un delito puede ser un **elemento disuasivo** para el delincuente que por **temor a exponerse al peligro de perder su propiedad limita su actividad delictiva o no le resulta tan fácil su realización.** (Énfasis suplido). Exposición de Motivos de la Ley Núm. 93 de 13 de julio de 1988, 1988 LPR 408, 409. Véase, también, Exposición de Motivos de la Ley Núm. 39 de 4 de julio de 1960, 1960 LPR 70.

de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza". *Íd.*

Los bienes sujetos a confiscación al amparo de la Ley Uniforme de Confiscaciones de 2011, *supra*, serán todos aquellos que resulten, sean producto o se utilicen "durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, […]; así como en otras leyes", según reza en la referida disposición legal. Art. 9 de la Ley Núm. 119-2011, 34 LPRA sec. 1724f.[8]

Por su parte, el Art. 15 de la Ley Uniforme de Confiscaciones de 2011, 34 LPRA sec. 1724l, establece todo lo relacionado al proceso para impugnar la confiscación. A esos efectos, la persona que quede notificada de la confiscación y demuestre ser el dueño o la dueña de la propiedad podrá instar una demanda dentro del término provisto para ello en la correspondiente Sala Superior del Tribunal de Primera Instancia. En lo pertinente, y una vez el tribunal autoriza la demanda de impugnación, la ley dispone que la parte demandante tendrá el peso de la prueba y deberá derrotar la

---

[8] En lo relacionado a la forma en que se ocupará el bien objeto de confiscación y los escenarios en que ello procederá, véase el Art. 10 de la Ley Núm. 119-2011, 34 LPRA sec. 1724g.

presunción de corrección y legalidad de la confiscación. *Íd*. En el precitado artículo, también se pauta que, para fines de esta ley, "se considerará "dueño" de la propiedad una persona que demuestre tener interés propietario en la propiedad incautada, incluyendo una persona que posea un gravamen sobre dicha propiedad a la fecha de ocupación de la propiedad incautada, o una cesión válida de tal interés propietario".

En cuanto a esto último, precisa señalar que la definición de "dueño" a la que hemos hecho referencia es producto de una de las varias enmiendas que ha sufrido la Ley Uniforme de Confiscaciones de 2011, *supra*, desde su entrada en vigor. Específicamente, la Ley Núm. 262-2012 se aprobó a los fines de incorporar ciertas enmiendas técnicas a la Ley Uniforme de Confiscaciones de 2011, *supra*, entre ellas, una definición de "dueño" que asegurara las protecciones constitucionales que reconocen el derecho a la vida, a la libertad y al disfrute de la propiedad, así como aquella en contra de que se prive a la ciudadanía de su libertad y su propiedad sin un debido proceso de ley. Exposición de Motivos de la Ley Núm. 262-2012, (2012 (Parte 2) Leyes de Puerto Rico 2341).

Del Informe Positivo sometido por la Comisión de lo Jurídico al proyecto de ley que dio paso a la mencionada enmienda, se desprende que la intención legislativa fue establecer con claridad que

> los acreedores garantizados por un bien sujeto
> a incautación poseen un "interés propietario"
> en dicho bien que de acuerdo a la
> jurisprudencia vigente les convierte en un
> "dueño inocente" a los cuales se extienden las
> garantías constitucionales antes expresadas.
> *Del Toro Lugo v. Estado Libre Asociado de
> Puerto Rico,* 136 D.P.R. 973 (1994); *First Bank,
> Universal Insurance Company v. Estado Libre
> Asociado de Puerto Rico*, 156 D.P.R. 77 (2002).
> Informe Positivo sobre P. de la C. 3677,
> Comisión de lo Jurídico, Cámara de
> Representantes de Puerto Rico, 30 de marzo de
> 2011, 7ma Sesión Ordinaria, 16ta Asamblea
> Legislativa, pág.2.

En ese informe, también se consignó que, del memorial explicativo de la Oficina del Comisionado de Seguros a la pieza legislativa en aquel momento bajo estudio, se desprendía "que de acuerdo con la doctrina establecida [por este Tribunal] […], [a]nte un acto de confiscación, el dueño del bien confiscado, así como el tenedor de interés legal o económico de dicho bien, son considerados terceros inocentes en aquellas instancias en que estos no hayan puesto de manera voluntaria el bien en posesión del infractor o que hayan tomado medidas cautelares par[a] prevenir el uso ilegal de la propiedad en la comisión de delito". *Íd.*, pág. 4.

En resumen, una lectura integral de lo antes expuesto revela que, historicamente, los estatutos en materia de confiscación en Puerto Rico han sido aprobados con la intención de que el proceso de la acción sea civil en su forma, pero con el claro objetivo de disuadir la actividad criminal debido al temor que infunde la pérdida de la propiedad, es decir, como efecto punitivo para

quien cometa un delito. Precisamente por eso, la larga jurisprudencia que ha desarrollado esta Curia tiene una marcada tendencia a interpretar de manera restrictiva los distintos estatutos de confiscación de forma compatible con la justicia y los dictados de la razón natural. *Reliable Financial v. ELA*, *supra*, pág. 297; *Coop. Seg. Múlt. v. E.L.A.*, *supra*, pág. 668; *Centeno Rodríguez v. E.L.A.*, *supra*, pág. 913; *Del Toro Lugo v. E.L.A.*, *supra*, pág. 985; *Carlo v. Srio. de Justicia*, *supra*, pág. 363.

### B.

Asi las cosas, y de conformidad con lo antes señalado, por décadas este Tribunal ha atendido controversias en materia de confiscación de bienes lícitos presuntamente utilizados para la comisión de actos delictivos. **En todos, el razonamiento aplicado es el mismo: el estatuto confiscatorio, aunque civil en su forma, "opera como disuasivo contra los violadores de la ley", por lo que su interpretación ha de ser restrictiva.** *Reliable Financial v. ELA*, *supra*, pág. 297.

En *Downs v. Porrata, Fiscal*, 76 DPR 611 (1954), por mencionar algunos ejemplos, esta Curia debía determinar el efecto de un indulto total, pleno e incondicional concedido a un convicto sobre la propiedad confiscada por medio de la cual se cometió el delito condonado. Emprendida la tarea, y luego de examinar la normativa aplicable, razonamos que la ficción jurídica sobre la cual opera la acción *in rem* "no tiene un valor absoluto

del cual deba hacerse depender la resolución [del] caso", pues "[n]o es la naturaleza de la acción, sino el verdadero propósito, lo que nos debe guiar en una situación como ésta". *Íd.*, pág. 619. Así, concluimos que, toda vez que la propiedad confiscada se trataba de un bien útil, el efecto práctico del indulto -- entiéndase, borrar todo vestigio de culpabilidad de la persona -- convertía automáticamente el bien confiscado en una propiedad inocente que debía revertirse a su dueño. *Íd*. Así pues, en esa ocasión, destacamos que era "la culpa del dueño la que convert[ía] [la propiedad] en un instrumento o medio ilícito para [la] comisión de un delito". *Íd*.

Casi una década después, en *Ochoteco v. Tribunal Superior*, 88 DPR 517 (1963), este Foro se encontró ante un escenario donde el dueño de un vehículo de motor, contra quien no se había señalado conducta criminal alguna, impugnó la confiscación tras haberse encontrado no culpable a los presuntos actores del delito que motivaron la confiscación. Ante ello, y a la luz de la Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones de 1960, *supra*, resolvimos que "la naturaleza *in rem* de la acción no la [desvestía] de su condición esencialmente punitiva y de infligir castigo", por lo que no procedía la confiscación "cuando la persona a cargo del vehículo es [un] dueño […] inocente de la

infracción". *Ochoteco v. Tribunal Superior*, *supra*, págs. 526, 528.

Empleando igual lógica, en *Carlo v. Srio. de Justicia*, *supra*, nos preguntamos si resultaba consistente con la justicia y los dictados de la razón natural que la persona absuelta en juicio aún quedara expuesta al castigo que implicaba la pérdida de su propiedad. A ello, respondimos en la negativa. Allí, concluimos que

> [l]a absolución en los méritos adjudica con finalidad irrevisable el hecho central, tanto del caso criminal como el de confiscación, de que el vehículo no se utilizó para transportar mercancía ilícita. Daría lugar a una anomalía resolver bajo estas circunstancias que no habiéndose probado en el primer caso que el acusado [utilizó] el vehículo para transportar material relacionado con el juego, hubiese de enfrentarse todavía a la misma cuestión en la demanda de impugnación. *Íd.*, pág. 363.

Expresamos, además, que en ese caso la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia también exigía la desestimación de la confiscación civil. En esa línea, enfatizamos que decidir lo contrario trastocaría las garantías constitucionales relacionadas a la libertad personal, al debido proceso de ley, y en contra de la doble exposición y de que el Estado tome propiedad privada sin que medie justa compensación.

La norma pautada en *Carlo v. Srio. de Justicia, supra*, fue posteriormente ampliada en *Del Toro Lugo v. E.L.A.*, *supra*. En este último, al delinear la naturaleza y los propósitos que orientaban los estatutos sobre

confiscación en nuestro ordenamiento, determinamos que no se sostiene la confiscación de un vehículo de motor de un tercero inocente cuando los cargos por el delito que dio lugar a la confiscación se desestiman por no existir causa probable para acusar al presunto autor del delito (en este caso, el pasajero). En particular, indicamos que, cuando no exista una *scintilla* de evidencia para la determinación de causa probable en la vista preliminar y esa determinación advenga final y firme, tampoco podrá sostenerse la confiscación de un vehículo relacionado al delito imputado, pues "[e]l propósito punitivo, que también persigue la confiscación, nos impide resolver lo contrario". *Íd.*, pág. 993. Resaltamos que "*[e]l fundamento sobre el cual descansa la confiscación ha desaparecido al ser exonerado el imputado del delito que precisamente justificó la incautación del automóvil por parte del Estado*". (Énfasis en el original). *Íd.* Sumamos a ello que, tal y como dicta la jurisprudencia federal, debíamos recordar que un vehículo de motor no es en sí mismo un objeto peligroso cuya confiscación cumpla un objetivo remedial. *Íd.*[9]

---

[9] En *Del Toro Lugo v. E.L.A.*, *supra*, también resolvimos que "la determinación *final y firme* respecto a la exclusión o supresión de una evidencia ilegalmente obtenida, hecha en el proceso penal por el delito que da base a la confiscación, constituirá cosa juzgada en su modalidad de impedimento colateral por sentencia, en cuanto a la admisión de dicha evidencia en la acción de impugnación de confiscación, siempre que dicha determinación judicial sea debidamente planteada e introducida en evidencia". *Íd.*, pág. 997.

Años más tarde, en *Suárez v. E.L.A.*, *supra*, pautamos que aplicaba la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia en un proceso de confiscación civil cuando los cargos por los delitos imputados que vinculaban la propiedad confiscada (un vehículo de motor) fueron desestimados por incumplimiento con los términos de juicio rápido. **Así, reafirmamos una vez más el vínculo necesario en todo caso de confiscación entre la propiedad confiscada y la comisión de un delito.** *Íd.*, pág. 55.

Asimismo, en *Ford Motor v. E.L.A.*, *supra*, tras exponer el esquema legal y jurisprudencial aplicable, dictamos que el archivo y el sobreseimiento de una acusación criminal al amparo de un programa de desvío y rehabilitación constituye cosa juzgada en su modalidad de impedimento colateral por sentencia en una acción civil de impugnación de confiscación. A idéntica conclusión llegamos en *Díaz Morales v. Depto. de Justicia*, 174 DPR 956 (2008), al resolver que los foros inferiores erraron al desestimar una demanda de impugnación de confiscación por ser incompatible con los programas de desvío contemplados en la Ley de Menores de Puerto Rico y nuestro pronunciamiento en *Ford Motor v. E.L.A.*, *supra*.

Más recientemente, al amparo de la actual Ley Uniforme de Confiscaciones de 2011, *supra*, en *Coop. Seg. Múlt. v. E.L.A.*, *supra*, seguimos la larga progenie

jurisprudencial anclada en la interpretación restrictiva. Apoyados en nuestros anteriores pronunciamientos, y lejos del automatismo de aplicar la ficción jurídica sobre la cual descansa la acción *in rem*, concluimos que la extinción de la causa penal por la muerte de la persona imputada del delito también tiene el efecto de extinguir el proceso de confiscación civil de la propiedad ocupada. *Íd.*, págs. 680-681. Así, **rechazamos "la confiscación de un bien sin que nadie [fuera] convicto de delito"**, e impedimos que se extendiera "irrazonablemente la ficción jurídica en la que se funda la acción [*in rem*], al extremo de que una 'cosa', por sí misma, sería culpable de la comisión de un acto delictivo". *Íd.*, pág. 681. **Es decir, ante la ausencia de acusación criminal, resolvimos que la extinción de la confiscación civil era inevitable.** Tal es el caso de epígrafe.

Nótese que, en todos esos escenarios, el razonamiento empleado por este Tribunal reflejaba "un decidido desarrollo hacia condicionar el proceso civil de confiscación al resultado [y, con ello a la existencia] de la causa criminal contra el alegado autor del delito que fundamenta dicha confiscación". *Coop. Seg. Múlt. v. E.L.A.*, *supra*, pág. 676. Este condicionamiento, **como vimos, "no se trata únicamente de la aplicación de la doctrina de impedimento colateral por sentencia, sino de excepciones a la independencia del proceso *in rem* fundadas**

**en la extinción [ausencia] de la acción penal contra la persona presuntamente responsable del delito**". *Íd*. La norma reiterada es clara: las confiscaciones no son favorecidas por los tribunales y los estatutos que las autorizan son interpretados restrictivamente "de suerte que resulten consistentes con la justicia y los dictados de la razón natural". *Carlo v. Srio. de Justicia*, *supra*, pág. 363, citando a *Pueblo v. González Cortés*, 95 DPR 164, 168 (1967).

Lamentablemente, la reciente variación en la composición de este Tribunal trajo consigo el que, un razonamiento tan bien pensado, analizado y estudiado haya sido recientemente abandonado en, por ejemplo, *Figueroa Santiago y otro v. ELA*, 2021 TSPR 121, 207 DPR __ (2021); *Mapfre Praico Ins. et al. v. ELA*, 195 DPR 86 (2016) (Sentencia) y, ahora, en el caso que nos ocupa.

IV.

De otra parte, y por resultar en extremo pertinente para la correcta disposición de los asuntos ante nuestra consideración, es menester señalar aquí que el Art. 512 de la Ley Núm. 4 de 23 de junio de 1971, conocida como Ley de Sustancias Controladas, según enmendada, 24 LPRA sec. 2511b, enumera los bienes que estarán sujetos a confiscación al amparo de esa ley. En lo que nos concierne, el precitado artículo dispone que estará sujeto a confiscación "[t]odo medio de transporte, incluyendo naves aéreas, vehículos, bestias o

embarcaciones, que se usen o se destinen para transportar o facilitar en alguna forma la transportación, venta, recibo, posesión o encubrimiento de la propiedad descrita en los apartados (1) y (2) de este inciso".[10] Es decir, que cuando un bien sea utilizado o destinado por alguna persona para transportar o facilitar, entre otras cosas, la posesión de una propiedad o material ilícito podrá ser confiscado por el Estado en virtud de la precitada disposición legal.

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que procedía disponer de la causa de epígrafe. Como una mayoría de este Tribunal no lo hizo, procedemos -- desde la disidencia -- a así hacerlo.

V.

Como mencionamos anteriormente, en el presente caso el ELA sostiene que no es necesario iniciar un procedimiento criminal en contra de persona alguna para que proceda la confiscación civil de cierto vehículo de motor. Asimismo, insiste en que la presunción de legalidad y corrección que tiene la confiscación impugnada en el caso de autos debe ser rebatida por los

---

[10] Los apartados 1 y 2 del artículo de referencia leen como sigue: 1) Toda sustancia controlada fabricada, distribuida, dispensada o adquirida, infringiendo las disposiciones de esta ley, y 2) Toda materia prima, parafernalia, producto o equipo de cualquier clase que se use o se proyecte usar en la fabricación, confección de compuestos, elaboración, entrega, importación, o exportación de cualquier sustancia controlada, infringiendo las disposiciones de esta ley. *Íd*.

recurridos, pero que eso no ha ocurrido. No le asiste la razón.

Y es que, de entrada, y como ya hemos adelantado, la Ley Uniforme de Confiscaciones de 2011, *supra*, aplicable a los hechos del presente litigio, a pesar de su carácter civil en lo procesal, es un estatuto que, a todas luces, persigue un objetivo punitivo al imponer una pena adicional al propietario del bien objeto de confiscación. **Ante ello, la interpretación de dicha ley debió ser restrictiva en la medida que afecta derechos de rango constitucional que impiden una aplicación automatizada y absoluta de la ficción jurídica del proceso de confiscación *in rem*.**

**De haberse realizado dicho análisis, la conclusión a la que se hubiese llegado en la Opinión que hoy emite este Tribunal, forzadamente, hubiera sido que la ausencia de cargos criminales en contra de persona alguna no solo tiene el efecto de colocarnos ante un propietario o dueño del bien confiscado protegido por la presunción de inocencia, sino que también nos presenta una falta de vínculo entre la propiedad confiscada y el delito cometido, sumado a la naturaleza legal del objeto confiscado.** Con ese cuadro, sin duda alguna, procedía que confirmáramos las determinaciones emitidas por los foros recurridos.

De igual forma, reiteramos que, a luz del esquema normativo y jurisprudencial -- federal y local -- antes

discutido, también era nuestra responsabilidad el evaluar si la ausencia total de cargos criminales por los hechos que motivaron la confiscación del vehículo de motor en la causa de epígrafe, era un hecho suficiente para derrotar la presunción de legalidad y corrección que establece el Art. 15 de la Ley Uniforme de Confiscaciones de 2011, *supra.* Realizado dicho análisis, entendemos que sí lo era. Adviértase que nada en la precitada ley impide que la parte demandante en un proceso de impugnación de confiscación civil presente como defensa -- como lo hicieron los aquí recurridos -- la ausencia de un proceso criminal en su contra o en contra de persona alguna. Ese, precisamente, y en lo relacionado a este caso, resultaba ser el hecho central que derrotaba el elemento necesario de conexión entre el delito cometido y la propiedad confiscada en el presente litigio.

Sin embargo, y muy lejos de lo antes reseñado, una mayoría de este Tribunal, aun cuando reconoce que los estatutos confiscatorios deben ser interpretados restrictivamente por el propósito punitivo que persiguen y los derechos que ello puede afectar, emplea de manera mecánica la ficción jurídica que plantea que la *cosa* por sí sola es autora de delito. Con ello, erróneamente pauta que la falta de presentación de cargos por los hechos que motivaron la confiscación impugnada en el presente litigio no invalida automáticamente la acción confiscatoria del Estado sobre un objeto lícito.

Nada más lejos del razonamiento que por décadas hemos empleado en casos como el de autos. No se trata, pues, de automáticamente invalidar la acción confiscatoria del Estado, sino de no aplicar automáticamente una ficción jurídica que, como hemos probado, requiere que alguien sea el autor del delito que da paso a la confiscación. **"Alguien tiene que utilizar la cosa delictiva"**, **por lo que la ausencia de ello extingue la acción confiscatoria**. *Coop. Seg. Múlt. v. E.L.A.*, *supra*, pág. 668.

VI.

En fin, y a modo de epílogo, el caso de marras representaba la oportunidad perfecta para reiterar nuestros anteriores pronunciamientos en materia de confiscación. No podemos concluir, como hace una mayoría de este Tribunal, que "situaciones como éstas tienen por única contestación el hecho de que la acción va dirigida a la cosa *res*, por lo que los derechos de terceros inocentes [o dueños inocentes], ni están [involucrados], ni están protegidos. **Una generalización así de la norma de derecho aplicable no es en todos los casos procedente.** Cada caso debe verse y pensarse a la luz de sus hechos, ya que la naturaleza [*in rem*] de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo". (Énfasis suplido). *Ochoteco v. Tribunal Superior*, *supra*, págs. 527-528.

VII.

Es, pues, por los fundamentos antes expuestos que enérgicamente disentimos.


                                        Ángel Colón Pérez
                                        Juez Asociado